IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:22-cv-086 (WOB-CJS)

KAREN ROUNDTREE                                              PLAINTIFF

VS.                    <u>MEMORANDUM OPINION AND ORDER</u>

AVI FOODSYSTEMS,
INC., ET AL.                                                DEFENDANTS

Karen Roundtree ("Roundtree") brought this action against AVI Foodsystems, Inc. ("AVI") and Carmen Pullens ("Pullens") for alleged employment discrimination based on sex. Currently before the Court is Defendants' Motion for Summary Judgment. (Doc. 25).

The Court has carefully reviewed this matter and, being advised, now issues the following Memorandum Opinion and Order.

## *Factual and Procedural Background*

### A. Plaintiff's Employment History with Defendant AVI

Plaintiff Roundtree began working for Defendant AVI on August 5, 2018. (Doc. 25-1 at 9; Doc. 27 at 2). Eventually, she was promoted to a full-time Cook position and received a raise. (Doc. 25-1 at 9). In this role, she assisted in providing cafeteria services and flight meals for DHL employees at the airport in Hebron, Kentucky. (*Id.*; Doc. 27 at 2). Roundtree's shifts normally began between 2:30 a.m. and 4:00 a.m. and ended between 12:30 p.m. and 2:30 p.m. (Doc. 25-1 at 9).

**B. A Temporary Worker's Actions Toward Plaintiff**

On October 18, 2021, Roundtree began work at around 3:30 a.m. (*Id.* at 10). Around 6:00 a.m., a temporary worker named Hope Cody ("Cody"), who was employed by a third-party agency, PeopleReady, arrived to assist at AVI's DHL account. (*Id.*). According to Roundtree and General Manager Chef Charles "Chuck" Hegland ("Hegland"), Cody seemed to be impaired or under the influence of alcohol or drugs because her speech was slurred and her eyes were glossy and barely open. (*Id.* at 10-11; Doc. 26-1, Roundtree Dep. at 93:7-24; Doc. 27 at 2; Doc. 27-2 Hegland Dep. at 4:20-21, 6:2-6, 7:15-24).

After Cody told Hegland that she could perform her work better than he could, Hegland told District Manager Brian Pleiman ("Pleiman") that he felt like Cody should be sent home. (Doc. 27-2, Hegland Dep. at 10:7-11). Roundtree then heard Pleiman tell Hegland that Cody was going to go out to her car to "sober up." (Doc. 25-1 at 11; Doc. 26-1, Roundtree Dep. at 97:6-20). Cody then returned ten minutes later, looking "worse" and having difficulty standing. (Doc. 25-1 at 11; Doc. 26-1, Roundtree Dep. at 98:1-18).

Shortly after her return to the kitchen, Cody "walked up behind Roundtree and aggressively penetrated Roundtree's anus with her two fingers, pushing the fabric of Roundtree's underwear and pants into her anus along with Cody's fingers." (Doc. 26-1, Roundtree Dep. at 99:2-5; Doc. 27 at 3). Roundtree did not report

2

the incident to any member of AVI management or Human Resources that day, but instead told coworkers that she felt "disgusted," that she felt "like something happened to [her], but [she didn't] know," and that she felt "like something gross happened to [her]." (Doc. 25-1 at 11; Doc. 26-1, Roundtree Dep. at 99:17–19, 109:3–7). Roundtree completed her shift, then went home. (Doc. 25-1 at 11; Doc. 26-1, Roundtree Dep. at 99:11–21, 112:9–23).

### C. Defendants' Response

The next day, Roundtree reported to work at 2:46 a.m. (Doc. 25-1 at 11; Doc. 26-1, Roundtree Dep. at 115:4–7). Later that morning, Michelle Akridge ("Akridge"), AVI's General Manager at the DHL account, received a phone call from another PeopleReady temporary worker informing her that Cody had "grabbed her butt" at work, used vulgar language, and was insubordinate and aggressive. (Doc. 25-1 at 11; Doc. 26-11, Akridge Dep. at 17:18–21; Doc. 26-12 at 1).

The same day, Akridge tasked Assistant Manager Erika Bussell ("Bussell") with investigating the allegations against Cody. (Doc. 25-1 at 11; Doc. 26-11, Akridge Dep. at 17:22–23). In the course of her investigation, Bussell spoke with several AVI employees about Cody, one of whom reported Cody's interaction with Roundtree the previous day. (Doc. 25-1 at 12; Doc. 26-13, Bussell Dep. at 13:11–15; Doc. 27 at 6).

Accordingly, Bussell proceeded to speak with Roundtree and Defendant Pullens, Roundtree's supervisor, joined the conversation. (Doc. 25-1 at 12; Doc. 26-13, Bussell Dep. at 15:23–16:1; Doc. 26-19, Pullens Dep. at 14:1–15:5; Doc. 27 at 6). Although, at first, Roundtree refused to talk about her interaction with Cody, she eventually told Bussell and Pullens that Cody had "put her fingers up [her] butt." (Doc. 25-1 at 12; Doc. 26-1, Roundtree Dep. at 121:2–122:11; Doc. 26-13, Bussell Dep. at 16:3–4; Doc. 27 at 6). Roundtree also noted that she didn't want anyone else to know what happened because "she didn't want people laughing at her or snickering." (Doc. 26-19, Pullens Dep. at 15:15–18; Doc. 27 at 6).

After hearing the results of Bussell's investigation, Akridge decided that Cody should not be allowed to return to AVI. (Doc. 25-1 at 13; Doc. 26-11, Akridge Dep. at 12:12–17). Accordingly, that afternoon, she called PeopleReady and instructed them to inform Cody that she was no longer welcome at AVI's DHL account. (Doc. 25-1 at 13; Doc. 26-11, Akridge Dep. at 12:15–13:6). Akridge had previously followed this process for other PeopleReady employees and none of them ever returned to AVI. (Doc. 25-1 at 13; Doc. 26-11, Akridge Dep. at 14:10–22).

Pleiman also followed up with PeopleReady to ensure that Cody was on the Do-Not-Return list for DHL after the conclusion of Bussell's investigation. (Doc. 25-1 at 13; Doc. 26-14, Pleiman

Dep. at 18:5-14). Pleiman spoke to Tami Fischer ("Fischer") of PeopleReady via phone call and text message and she informed him that someone had spoken to Cody and told her not to return to DHL. (Doc. 25-1 at 13; Doc. 26-14, Pleiman Dep. at 18:15-19:2, 26:2-5). Pleiman also emailed Fischer regarding Cody. (Doc. 25-1 at 13; Doc. 26-14, Pleiman Dep. at 35:2-9; Doc. 26-15 at 3-4). Fischer responded the same day and indicated that PeopleReady would "DNR [Cody] and put this on the record." (Doc. 26-15 at 3).

Neither Akridge nor Bussell spoke to Cody during the course of the investigation or personally informed her that she should not return to work for AVI. (Doc. 25-1 at 13; Doc. 26-11, Akridge Dep. at 13:20-14:7, Doc. 26-13, Bussell Dep. at 15:20-22, 16:16-17:18). Both Akridge and Bussell were under the impression that, by the time they concluded their investigation, Cody had already left work for the day because she was not feeling well. (Doc. 25-1 at 13; Doc. 26-11, Akridge Dep. at 13:20-14:7; Doc. 26-13, Bussell Dep. at 16:14-17:18).

Roundtree did not recall interacting with Cody at all on October 19, 2021, and she did not know what time Cody left AVI on that day. (Doc. 26-1, Roundtree Dep. at 116:13-23). However, Roundtree got upset after her conversation with Bussell and Pullens because she had to work near Cody before Cody left and because some of her coworkers began asking questions about the incident with Cody. (*Id.* at 100:21-101:25, 125:9-13; Doc. 27 at 6-7).

Pullens noticed that Roundtree was upset, so she told other employees not to discuss the incident and then went outside with Roundtree to speak to her privately. (Doc. 25-1 at 12; Doc. 26-1, Roundtree Dep. at 137:19-138:6). Outside, Pullens told Roundtree that Cody would not return to AVI. (Doc. 25-1 at 12; Doc. 26-1, Roundtree Dep. at 125:19-20). She then asked Roundtree if she wanted to leave work early and Roundtree left immediately thereafter. (Doc. 25-1 at 12; Doc. 26-1, Roundtree Dep. at 137:4-8).

The following day, October 20, 2021, Roundtree arrived for work at 3:06 a.m. (Doc. 25-1 at 14; Doc. 26-1, Roundtree Dep. at 140:21-24). Around 6:00 a.m., Cody reported to AVI's DHL account. (Doc. 25-1 at 14; Doc. 26-1, Roundtree Dep. at 141:7-8). Upon seeing Roundtree, Cody made eye contact with her and "held up three fingers in a suggestive manner," but did not speak to or touch her. (Doc. 25-1 at 14; Doc. 26-1, Roundtree Dep. at 142:5-13; Doc. 27 at 8). Roundtree immediately left work. (Doc. 25-1 at 14; Doc. 26-1, Roundtree Dep. at 141:7-13).

When she learned that Cody had returned to AVI, Akridge contacted security to remove Cody from the premises. (Doc. 25-1 at 14; Doc. 26-11, Akridge Dep. at 27:12-25). Akridge then emailed a DHL security supervisor to ensure that Cody would not be permitted to enter the facility in the future. (Doc. 25-1 at 14; Doc. 26-11, Akridge Dep. at 27:25-28:2; Doc. 26-16 at 2-3). Pleiman also

contacted Fischer to let her know that Cody had returned to AVI despite her assurances to the contrary. (Doc. 25-1 at 14; Doc. 26-14, Pleiman Dep. at 35:12–36:2, 36:16–19; Doc. 26-15 at 2). Fischer responded that PeopleReady had spoken to Cody again, directed her never to return to AVI, and terminated her employment with them. (Doc. 25-1 at 14; Doc. 26-14, Pleiman Dep. at 36:3–19; Doc. 26-15 at 1).

**D. The Conclusion of Plaintiff's Employment with Defendant AVI**

After leaving work on October 20, Roundtree sat in her car in the parking lot for about an hour. (Doc. 25-1 at 15; Doc. 26-1, Roundtree Dep. at 143:2–4). While in her car, Roundtree called Pleiman, who apologized for Cody's return to AVI. (Doc. 26-1, Roundtree Dep. at 143:7–144:10). Later that afternoon, Roundtree also called Heather Migliozzi ("Migliozzi"), AVI's Director of Human Resources. (*Id.* at 146:7–9; Doc. 25-1 at 15). Roundtree told Migliozzi that she would not be returning to work until she received something in writing to confirm that Cody would no longer be permitted on AVI's premises and Migliozzi agreed that Pleiman would provide that for her. (Doc. 26-1, Roundtree Dep. at 146:7–15).

Pleiman gave Roundtree permission to use sick days on the following two days, a Thursday and Friday. (*Id.* at 146:20–25, 159:5–13; Doc. 25-1 at 15). However, on Thursday, October 21, 2021,

Roundtree sent a text message to Pleiman, asking if she could work a Saturday shift instead of taking a sick day on Friday. (Doc. 25-1 at 15; Doc. 26-1, Roundtree Dep. at 160:8-25; Doc. 26-6 at 1). In that text, she also told Pleiman that she would be back on Monday for her regularly scheduled shift. (Doc. 25-1 at 15; Doc. 26-6 at 1).

Pleiman responded to Roundtree's text by calling her and leaving a voicemail, but Roundtree never returned Pleiman's call. (Doc. 25-1 at 15; Doc. 26-1, Roundtree Dep. at 161:16-18). The following day, on Friday, October 22, 2021, Roundtree told Pleiman via text message that she would not be in for work on Saturday. (Doc. 25-1 at 15; Doc. 26-1, Roundtree Dep. at 164:19-165:1; Doc. 26-7 at 1). Pleiman responded that Roundtree was not permitted to "text off," and that she needed to call him, or she would "be expected to be in." (Doc. 26-7 at 1).

AVI's Attendance and Call-Off Policy, which Roundtree signed on November 18, 2018, specified that "[r]eported absence and tardiness messages cannot be left on voicemail or sent by text messaging or email" and that employees "must personally speak with [their] supervisor or manager." (Doc. 26-3 at 1). Further, "[e]ach day absent requires an additional call" and failure to report to work or notify management was considered a voluntary resignation. (*Id.*). Roundtree could not recall calling Pleiman on October 22,

but did not report to work the next day. (Doc. 25-1 at 16; Doc. 26-1, Roundtree Dep. at 166:4-12).

On Sunday, October 24, Roundtree called Sylvester Carrick ("Carrick"), a Chef at AVI, to inform him that she would not be at work on Monday either. (Doc. 25-1 at 16; Doc. 26-1, Roundtree Dep. at 168:20-169:8; Doc. 27 at 9). Roundtree also missed the following three days of work, October 26, 27, and 28, 2021, but did not contact anyone at AVI to report her absences on those days. (Doc. 25-1 at 17; Doc. 26-1, Roundtree Dep. at 169:24-171:11). On Wednesday, October 27, Migliozzi left Roundtree a voicemail, asking Roundtree to return her call, but Roundtree declined to do so. (Doc. 25-1 at 17; Doc. 26-1, Roundtree Dep. at 170:6-7).

On Thursday, October 28, 2021, Migliozzi left Roundtree another voicemail, explaining that AVI needed to "know what [her] intentions are regarding [her] job." (Doc. 25-1 at 17; Doc. 26-1, Roundtree Dep. at 175:21-176:11). Migliozzi also told her that if she and Pleiman did not "hear from [her] by the end of the day," they would "accept that as [her] resignation from [her] job." (Doc. 25-1 at 17; Doc. 26-1 Roundtree Dep. at 186:3-24). Migliozzi asked Roundtree to call her or Pleiman by 5:00 p.m. (Doc. 25-1 at 17; Doc. 26-1 Roundtree Dep. at 186:3-24).

In response, Roundtree sent a text message to Pleiman at 4:43 p.m. stating that she "did not submit a resignation." (Doc. 25-1 at 17; Doc. 26-7 at 1). However, she did not call either Migliozzi

or Pleiman that day because she "didn't trust them." (Doc. 26-1, Roundtree Dep. at 177:11–15). As a result of Roundtree's failure to accept or return calls from AVI, her failure to report to work, and her failure to report her absences consistent with AVI's Attendance and Call-Off Policy, AVI considered Roundtree to have resigned her employment as of October 29, 2021. (Doc. 25-1 at 17–18; Doc. 26-20, Migliozzi Decl. ¶ 13).

Although she did receive a text message from another coworker, Roundtree did not communicate with anyone at AVI after sending the text message to Pleiman until she received a text message from Pullens on November 1, 2021. (Doc. 26-1, Roundtree Dep. at 178:2–179:9). In that message, Pullens told Roundtree that she had twenty-four hours to return her badge to avoid a $100 deduction from her final paycheck. (*Id.* at 179:13–20, 180:10–19; Doc. 25-1 at 18; Doc. 26-8 at 1). Roundtree did return her badge within the following twenty-four-hour period. (Doc. 25-1 at 18; Doc. 26-1, Roundtree Dep. at 182:19–25).

### E. This Lawsuit

Roundtree filed this lawsuit in Boone County Circuit Court on May 13, 2022, and, thereafter, Defendant AVI removed it to this Court on the basis of diversity of citizenship. (Doc. 1). Roundtree raises three claims under the Kentucky Civil Rights Act ("KCRA"): (1) sexual harassment and hostile work environment against AVI;

(2) gender discrimination against AVI; and (3) retaliation against AVI and Pullens. (Doc. 1-1 ¶¶ 31-34). Roundtree also makes a negligent hiring, retention, and/or supervision claim against AVI. (*Id.* ¶¶ 35-39).

### *Analysis*

Under federal law, summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "In determining whether there exists a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." *See Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992 (6th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Summary judgment is inappropriate if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Id*. However, "[t]he non-moving party also may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); Fed. R. Civ. P.

56(e)(2)).

## A. Sexual Harassment/Hostile Work Environment

"A sexual harassment claim brought under the Kentucky Civil Rights Act ("KCRA") is to be analyzed in the same manner as a claim brought under Title VII, its federal counterpart." *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005) (citing *Ammerman v. Bd. of Educ. of Nicholas Cnty.*, 30 S.W.3d 793, 797–98 (Ky. 2000)). To establish a prima facie case of a hostile work environment based on sexual harassment, a plaintiff must establish that: (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment created a hostile work environment; and (5) her employer is vicariously liable. *Id.* (citing *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560–61 (6th Cir. 1999)).

AVI does not dispute that Roundtree has satisfied the first two elements of her claim, but instead argues that she has failed to establish the last three. (Doc. 25-1 at 20).

As to the third element, because Cody and Roundtree are both female, Roundtree must establish that Cody subjected her to same-sex harassment. In the Sixth Circuit, this can be accomplished in one of three ways: (1) by introducing evidence that the harasser was acting out of sexual desire; (2) by introducing evidence that the harasser was motivated by a general hostility to the presence

12

of members of that sex in the workplace; or (3) by introducing comparative evidence of how the harasser treated members of both sexes in a mixed-sex workplace. *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 307-08 (6th Cir. 2016) (citing *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 765 (6th Cir. 2006)).

Under the third method, a plaintiff can succeed by "presenting evidence of misconduct against only one sex, and a lack of misconduct against the other" because "such evidence may make differential treatment the obvious inference to draw." *Id.* at 309. Courts must "remain mindful that the 'critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

Accordingly, Roundtree has pointed to the fact that Cody only sexually harassed one other person at AVI: the PeopleReady employee who reported Cody's conduct to Akridge. (Doc. 27 at 13). That employee was also female, and she experienced similar harassment via unwanted physical contact. (*See* Doc. 26-12 at 1). Thus, no male employees were subjected to Cody's inappropriate and sexual touching. Based on this evidence, a reasonable jury could conclude that Cody's harassment of Roundtree was based on her sex.

Roundtree has also sufficiently established that Cody's unwelcome touching created a hostile work environment. A hostile

work environment "exists 'when the workplace is permeated with
discriminatory intimidation, ridicule, and insult that is
sufficiently severe or pervasive to alter the conditions of the
victim's employment and create an abusive working environment.'"
*Ammerman*, 30 S.W.3d at 798 (quoting *Williams*, 187 F.3d at 560).
Courts should consider all of the circumstances in assessing
whether a hostile work environment is present, including the
frequency of the discriminatory conduct; its severity; whether it
is physically threatening or humiliating, or is a mere offensive
utterance; and whether it unreasonably interferes with an
employee's work performance. *Id.* (citing *Harris v. Forklift Sys.,
Inc.*, 510 U.S. 17, 23 (1993)).

Although the Sixth Circuit has held that isolated incidents
will not generally create a hostile work environment, one
"extremely serious" incident can be enough. *Bowman v. Shawnee State
Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) (citing *Moris v. Oldham
Cnty. Fiscal Ct.*, 201 F.3d 784, 790 (6th Cir. 2000)). Defendants
have cited several cases in which courts held that sexual comments
or unwanted touching were insufficient to create a hostile work
environment, but none of those cases involved the unwanted
penetration of an employee's anus. (*See* Doc. 25-1 at 21; Doc. 28
at 8) (citing *Clark*, 400 F.3d at 351; *Bowman*, 220 F.3d at 459;
*Burnett v. Tyco Corp.*, 203 F.3d 980, 985 (6th Cir. 2000); *Stacy v.*

14

*Shoney's, Inc.*, No. 97-5393, 1998 WL 165139, at *1-3 (6th Cir. 1998)).

On the contrary, earlier this year, the Kentucky Court of Appeals concluded that a similarly serious single incident of unwanted touching of the area between an employee's buttocks and vagina clearly constituted physically threatening or humiliating conduct and, thus, created a hostile work environment. *See Clements v. Steak 'N Shake, Inc.*, No. 2022-CA-0466-MR, 2023 WL 3134672, at *4 (Ky. Ct. App. Apr. 28, 2023). Further, Roundtree has established that, although Cody only touched her once and made a suggestive gesture on one other occasion, there is at least a genuine issue of material fact as to whether she was able to continue working productively while in Cody's presence. Accordingly, Roundtree's claim does not fail on the fourth element.

However, Roundtree falls short on the fifth element. To hold AVI vicariously liable for Cody's conduct, Roundtree must demonstrate that it knew or should have known about Cody's sexual harassment and that it failed to take prompt and appropriate corrective action. *See Clark*, 400 F.3d at 348 (citing *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999)). "A response is generally adequate, however, if it is 'reasonably calculated to end the harassment.'" *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 340 (6th Cir. 2008) (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 663-64 (6th Cir. 1999)).

15

It is undisputed that no member of AVI management was or should have been aware of Cody's conduct toward Roundtree until her coworker reported it to Bussell and Roundtree confirmed the allegations on the morning of October 19, 2021.[1] Further, it is undisputed that by that afternoon, both Akridge and Pleiman had notified PeopleReady that Cody was no longer welcome on AVI's premises and received confirmation that Cody had been informed that she was on its Do-Not-Return list. (*See* Doc. 26-11, Akridge Dep. at 12:15-13:7; Doc. 26-14, Pleiman Dep. at 18:15-19:2, 26:2-5; Doc. 26-15 at 3-4).

Although Cody did ultimately return to AVI the next day, Akridge immediately enlisted security's assistance to escort Cody off the premises and thereafter contacted the facility's security supervisor to ensure that she would not be granted entry in the future. (*See* Doc. 26-11, Akridge Dep. at 27:20-28:2).

Courts have held that employers responded reasonably to similar reports of inappropriate conduct by taking remedial action within three days to a week. *See, e.g.*, *Clements*, 2023 WL 3134672, at *4 (affirming summary judgment for an employer when it investigated and terminated the offending employee within four days, including the Christmas holiday); *Garcia v. Beaumont Health*

---

[1] Although Roundtree does argue that "Pleiman knew that Cody was a danger to others," (Doc. 27 at 17), she has not attempted to establish that he was or should have been aware that Cody's alleged impairment would lead to sexual harassment.

*Royal Oak Hosp.*, No. 22-1186, 2022 WL 5434558, at *4–5 (6th Cir. Oct. 7, 2022) (affirming summary judgment for an employer when it investigated an employee one week after a complaint and thus ended the complained-of harassment); *Rudd v. Shelby Cnty.*, 166 F. App'x 777, 778–79 (6th Cir. 2006) (finding that an employer took prompt and corrective action when it permitted the plaintiff to work in a separate facility on the day following her complaint and began an investigation five days later); *Stevens v. U.S. Postal Serv.*, 21 F. App'x 261, 264 (6th Cir. 2001) (holding that "a three-day delay does not constitute an unreasonable failure to take prompt corrective action").

Here, AVI's response was more prompt than the sufficient responses in *Clements*, *Garcia*, *Rudd*, and *Stevens*, as Cody was permanently removed from AVI's premises within twenty-four hours of the complaints against her. To the extent that Roundtree contends that her other colleagues also contributed to the hostile work environment by "snickering" about her situation, (*see* Doc. 27 at 15), that, too, was undisputedly and immediately ended when Pullens directed everyone to stop talking about the incident. (*See* Doc. 26-1, Roundtree Dep. at 137:19–138:9).

In support of her claim, Roundtree argues that her supervisors failed to comply with AVI's Anti-Harassment, Anti-Discrimination and Inappropriate Conduct Policy, which requires that supervisors and managers immediately report complaints of harassment or

17

inappropriate conduct to Human Resources. (Doc. 27 at 16; Doc. 27-5 at 1). However, Roundtree has failed to point to any case in which a court has held that an employer's response can only be considered "prompt and appropriate" if it complies with its internal policy.

Although, in *Clark*, the Sixth Circuit held that supervisors' failure to comply with an employer's policy to report incidents of sexual harassment created a genuine issue of fact as to whether that employer's conduct was reasonable, the facts of *Clark* are distinguishable. *See* 400 F.3d at 350-51. In that case, the plaintiff's supervisors did not address the harassment that they witnessed for several years, which meant that even though her employer had a reasonable sexual harassment policy, it was implemented in a potentially unreasonable way. *See id.* at 345-47, 350-51.[2]

However, here, Bussell, Akridge, and Pleiman investigated the allegations against Cody and had her placed on the Do-Not-Return list within hours of learning of her conduct. Regardless of whether AVI's sexual harassment policy was reasonable or whether Roundtree's supervisors followed it, they promptly responded to

---

[2] This portion of the *Clark* opinion is also distinguishable because it dealt with the *Faragher-Ellerth* affirmative defense, not the plaintiff's prima facie case. *See* 400 F.3d at 349-51.

end the harassment by barring Cody from the workplace. That is enough to avoid vicarious liability.

Similarly, Akridge and Pleiman's failure to alert security or other AVI employees that Cody was not allowed to return does not establish that their response was not reasonably calculated to end the harassment. Akridge testified that adding temporary workers to PeopleReady's Do-Not-Return list had always prevented them from returning in the past. (*See* Doc. 26-11, Akridge Dep. at 14:15-18). Pleiman also received confirmation that PeopleReady had communicated AVI's ban to Cody. (*See* Doc. 26-14, Pleiman Dep. at 18:15-19:2). Further, Pleiman testified that AVI's "standard" was simply to contact PeopleReady, not to inform security about temporary workers who had been placed on the Do-Not-Return list, and that such a standard had always worked for AVI previously. (*Id.* at 19:3-19).

Roundtree has not introduced any evidence to establish that either Akridge or Pleiman should have known that their communication with PeopleReady would be insufficient to keep Cody out of AVI's facility. Further, when Akridge learned that Cody had returned, she took immediate action which succeeded in permanently removing Cody from the premises.

Accordingly, no reasonable jury could find that AVI failed to take prompt and appropriate corrective action that was reasonably calculated to end the harassment against Roundtree. Because

Roundtree cannot prove an essential element of her sexual harassment/hostile work environment claim, AVI is entitled to summary judgment.[3]

### B. Gender Discrimination

Courts apply the *McDonnell Douglas* burden-shifting framework to gender discrimination claims under the KCRA. *Bd. of Regents of N. Ky. Univ. v. Weickgenannt*, 485 S.W.3d 299, 306 (Ky. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, the plaintiff first bears the burden of establishing a prima facie case. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). If she succeeds, the burden shifts to her employer to offer a legitimate, nondiscriminatory reason for its adverse employment action. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). Finally, the burden shifts back to the plaintiff, who must show that her employer's stated reason was actually a pretext for discrimination. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

### i.   Prima Facie Case

Like hostile work environment claims, gender discrimination claims under the KCRA are analyzed under federal standards. *See*

---

[3] Because Roundtree's prima facie case fails, the Court need not address the parties' arguments regarding AVI's *Faragher-Ellerth* affirmative defense. (*See* Doc. 25-1 at 25; Doc. 27 at 17–18).

*id.* (internal citations omitted). Thus, to establish her prima facie case of gender discrimination, Roundtree must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment decision; (3) she was qualified for her position; and (4) she was either replaced by a person outside the protected class or a similarly situated, non-protected employee was treated more favorably. *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007) (citing *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)).

AVI agrees that Roundtree is a member of a protected class and that she was qualified for her position but argues that she can neither show that she was subjected to an adverse employment decision nor that she was either treated differently than a similarly situated male employee or replaced by a male employee. (*See* Doc. 25-1 at 28–29).

As to the second element, AVI contends that it did not force Roundtree to leave her job. (*Id.* at 28). Instead, it notes that Roundtree admittedly elected to stop reporting to work and declined to communicate with her supervisors. (*Id.*). However, Roundtree argues that Pullens terminated her with the support of other managers or, alternatively, that she was constructively discharged. (Doc. 27 at 19, 21).

It is not clear that Migliozzi's determination that Roundtree "resigned" on October 29, 2021, despite Roundtree's text message

to the contrary, or Pullens's text message directing the return of her badge three days later are sufficient evidence that AVI terminated Roundtree. (*See* Doc. 26-7 at 1; Doc. 26-8 at 1; Doc. 26-20, Migliozzi Decl. ¶ 13). But, in compliance with its obligation to draw all factual inferences in favor of Roundtree, the Court will assume that a reasonable jury could conclude that she was terminated. *See Swallows*, 128 F.3d at 992 (citing *Anderson*, 477 U.S. at 255).

However, supposing Roundtree could establish the second element of her gender discrimination claim, her claim fails for another reason: she has not introduced sufficient evidence of the fourth element. Roundtree has not argued that she was replaced by a male employee and, thus, she must show that a similarly situated male employee was treated more favorably. *See Vincent*, 514 F.3d at 494. As to this point, Roundtree argues that Pleiman and Carrick, both male AVI employees, were not disciplined for violating the Anti-Harassment, Anti-Discrimination and Inappropriate Conduct Policy by failing to report allegations of sexual harassment to Human Resources, but she was terminated under the Attendance and Call-Off Policy after sending text messages instead of making phone calls to report absences. (Doc. 27 at 19).

But Roundtree "must present evidence that all relevant aspects of her employment situation are nearly identical to those of the employees who she alleges were treated more favorably." *See*

*Weickgenannt*, 485 S.W.3d at 308 (internal citation and quotation marks omitted). This means that, to be considered "similarly situated," employees must have dealt with the same supervisor, been subject to the same standards, and have engaged in the same conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Novotny v. Elsevier*, 291 F. App'x 698, 703–04 (6th Cir. 2008) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Yet, as Roundtree's own argument acknowledges, Pleiman and Carrick did not engage in similar conduct, and they allegedly violated a different AVI standard than she did. (*See* Doc. 27 at 19).[4] Roundtree has not pointed to evidence that any other AVI employee sent text messages in lieu of calling to report an absence or similarly failed to notify a supervisor regarding each missed shift. Accordingly, she has failed to satisfy the fourth element of her gender discrimination claim under the KCRA.

---

[4] AVI argues that Pleiman did comply with its policy because he emailed Human Resources regarding Roundtree's complaints the same day he learned about them, October 19, 2021. (Doc. 28 at 4; Doc. 29-2 at 1–2). However, this dispute is not material for the purposes of Defendants' present Motion. Even if Pleiman had violated the Anti-Harassment, Anti-Discrimination and Inappropriate Conduct Policy, he was not "similarly situated" to Roundtree.

*ii.   Pretext*

Although Roundtree's gender discrimination claim fails as a matter of law because she cannot establish a prima facie case, even if this Court could find otherwise, AVI has put forth legitimate nondiscriminatory reasons for its decision, namely that Roundtree violated its Attendance and Call-Off Policy by failing to report for work or properly notify supervisors of her absences and that she failed to call either Migliozzi or Pleiman as directed. (*See* Doc. 25-1 at 29). This shifts the burden back to Roundtree to prove that AVI's proffered reasons were a pretext for gender discrimination. *See Weickgenannt*, 485 S.W.3d at 306 (citing *McDonnell Douglas*, 411 U.S. at 804).

Roundtree can demonstrate pretext by showing that AVI's proffered reasons: (1) had no basis in fact; (2) were not the actual reasons for its action; or (3) were insufficient to explain its action. *See Gunn v. Senior Servs. of N. Ky.*, 632 F. App'x 839, 844 (6th Cir. 2015) (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008)). However, a plaintiff may not rely on her own subjective belief that her employer had a retaliatory motive. *Carson v. Ford Motor Co.*, 413 F. App'x 820, 824 (6th Cir. 2011) (citing *Mitchell*, 964 F.2d at 585).

Roundtree does not dispute that she failed to report to work after October 20, 2021, sent a text message to Pleiman instead of

calling him to report her October 23 absence, did not report her absences on October 25, 26, and 27 to anyone at AVI, and did not call either Migliozzi or Pleiman after receiving Migliozzi's voicemail. (*See* Doc. 26-1, Roundtree Dep. at 164:13–15, 164:19–165:1, 169:24–171:11, 177:11–15; Doc. 26-7 at 1).

Further, even if Migliozzi's October 28 voicemail requesting that Roundtree respond to her or Pleiman by the end of that day gave Roundtree a "final warning" about her conduct and a reasonable jury could conclude that Roundtree's text message to Pleiman that she "did not resign" was compliant with Migliozzi's directive, Roundtree acknowledges that she did not report to work or communicate with anyone at AVI the following day, the date Migliozzi considered the end of her employment. (*See* Doc. 26-1 Roundtree Dep. at 179:5–9, 186:3–24; Doc. 26-7 at 1; Doc. 26-20, Migliozzi Decl. ¶ 13). Accordingly, she has not demonstrated that AVI's proffered reasons have no basis in fact.

Roundtree has also failed to demonstrate that AVI was motivated by anything other than its proffered reasons. To succeed in using that approach, a plaintiff must "attack[] the employer's explanation by showing circumstances which tend to prove an illegal motivation was *more* likely than that offered by the defendant." *Gunn*, 632 F. App'x at 844 (quoting *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000)). Although she points out that Pleiman had written confirmation that Cody would not return but

25

declined to provide it to her, that is not evidence that he or anyone else had a discriminatory motive. (*See* Doc. 27 at 20).

Roundtree has not cited a single incident in which anyone at AVI, other than Cody, said or did anything that could indicate gender discrimination. Because Roundtree has not identified any circumstances which would tend to prove that AVI had an illegal motivation, she cannot show that any illegal basis was more likely to have motivated AVI's conduct than the nondiscriminatory reasons it offered. *See Adams v. Nature's Expressions Landscaping, Inc.*, No. 5:16-CV-98-JMH, 2018 WL 4390721, at *12 (E.D. Ky. Sept. 14, 2018) (finding that there was insufficient evidence of pretext where an employee failed to report to work or communicate with his supervisor).

As to the third method of establishing pretext, Roundtree "must demonstrate that other employees outside of her protected class were not fired, even though they were similarly situated and engaged in substantially identical conduct to that which the employer contends motivated its decisions." *Gunn*, 632 F. App'x at 847-48 (citing *Leggett Wire Co.*, 220 F.3d at 762). As discussed above, she has failed to meet this burden. Roundtree has not identified a single other employee who violated AVI's Attendance and Call-Off Policy by failing to report for work or notify supervisors of absences. That some managers may have violated other

AVI policies does not make their conduct "substantially identical" to Roundtree's.

Accordingly, Roundtree's gender discrimination claim also fails because no reasonable jury could find that AVI's proffered reasons for its actions were pretextual.

### C. Retaliation

Roundtree's KCRA retaliation claims against AVI and Pullens are also evaluated under the federal Title VII standard. *See Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014) (citing *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009)); *see also Brooks*, 132 S.W.3d at 801-02. Because Roundtree has not introduced direct evidence, the *McDonnell Douglas* burden-shifting framework applies, and, under it, Roundtree must first establish a prima facie case. *See Montell*, 757 F.3d at 504. If she succeeds, the burden shifts to AVI to produce a legitimate, non-retaliatory reason for its action. *See id.* (citing *Hamilton*, 556 F.3d at 435). If AVI does so, the burden shifts back to Roundtree to put forward evidence from which a reasonable jury could conclude that AVI's stated reason is pretextual. *See id.* (citing *Hamilton*, 556 F.3d at 435).

### *i. Prima Facie Case*

A prima facie case of KCRA retaliation has four elements: (1) the plaintiff engaged in protected activity; (2) the defendant

knew of the exercise of the plaintiff's civil rights; (3) thereafter, the defendant took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Brooks*, 132 S.W.3d at 803 (citing *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991)).

Defendants do not dispute that Roundtree has established the first and second elements. (*See* Doc. 25-1 at 26). Accordingly, the Court's analysis will concentrate on the third and fourth elements.

As discussed above, the Court will assume that a reasonable jury could conclude that Roundtree was terminated by either Migliozzi or Pullens, which satisfies the third element of her retaliation claims.

But Roundtree's claims against AVI and Pullens fall short on the fourth element. Ultimately, a plaintiff must demonstrate that her protected activity was a but-for cause of her employer's adverse action. *Montell*, 757 F.3d at 504 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). However, retaliation need not be the only cause of the adverse employment action, so long as the factfinder could "conclude that unlawful retaliatory motive was so integral to the adverse action that more likely than not the action would not have been taken had the employee not engaged in protected activity." *Asbury Univ. v. Powell*, 486 S.W.3d 246, 260 (Ky. 2016).

28

A plaintiff may establish a causal connection by showing: (1) that the decision-maker responsible for the adverse action was aware of the protected activity and (2) a close temporal relationship between the protected activity and the adverse action. *Id.* at 258 (citing *Ky. Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 135 (Ky. 2003)). Although Defendants argue to the contrary, (*see* Doc. 28 at 11), the Sixth Circuit has held that temporal proximity alone can be sufficient evidence of retaliatory conduct to establish causation. *See Montell*, 757 F.3d at 505 (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)).

But "'an intervening legitimate reason' to take an adverse employment action 'dispels an inference of retaliation based on temporal proximity.'" *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 628 (6th Cir. 2013) (quoting *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012)). In *Kuhn*, the Sixth Circuit found that there was no causal connection between an employee's complaints and his termination, despite a "relatively short amount of time" between the two events because the employee's "failure to return to work" was an intervening legitimate reason for his employer's adverse action. *Id.* Similarly, in *Wasek*, the Sixth Circuit concluded that an employee's retaliation claim could not survive summary judgment because the fact that he left work without authorization after complaining about sexual harassment gave his

employer an intervening legitimate reason to discipline him, which "dispel[led] an inference of retaliation based on temporal proximity." 682 F.3d at 471–72.

Roundtree's claim fares similarly. Undisputedly, she did complain about Cody's sexual harassment and her supervisors were aware of those complaints. But any inference of retaliation based on the ten days that elapsed between her original complaint and AVI's determination that she had "resigned" is dispelled by her failure to return to work or report her absences during that ten-day period. Because AVI had an intervening legitimate reason for its decision and Roundtree has not introduced any evidence of causation aside from temporal proximity, her retaliation claims fail as a matter of law.

*ii.   Pretext*

Even if Roundtree had sufficiently established a prima facie case of retaliation, she has not shown that AVI's proffered reasons for its determination, Roundtree's failure to return to work or report her absences, were pretextual. Although temporal proximity may establish causation for a prima facie case of retaliation, it is not sufficient evidence of pretext. *See Harris v. Burger King Corp.*, 993 F. Supp. 2d 677, 689 (W.D. Ky. 2014), *aff'd in part*, *dismissed in part*, No. 14-5126, 2015 WL 13868932 (6th Cir. May 1, 2015) (citing *Nicholson v. City of Clarksville, Tenn.*, 530 F. App'x

434, 448 (6th Cir. 2013)); *Cunningham v. Humana Ins. Co.*, No. 3:10-CV-56-H, 2011 WL 3878317, at *4 (W.D. Ky. Aug. 31, 2011) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)).

Roundtree makes the same pretext arguments in support of her retaliation claims that she made in support of her gender discrimination claim. (*See* Doc. 27 at 23). For the reasons discussed above, Roundtree has failed to demonstrate that AVI's proffered reasons had no basis in fact, did not actually motivate its action, or were insufficient to explain its action. *See Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 694 (E.D. Ky. 2014), *aff'd*, 610 F. App'x 519 (6th Cir. 2015) (citing *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 509 (6th Cir. 2008)). Accordingly, her KCRA retaliation claims cannot survive Defendants' Motion for Summary Judgment.

### D. Negligent Hiring, Retention, and/or Supervision

Finally, AVI contends that it is also entitled to summary judgment on Roundtree's negligent hiring, retention, and supervision claims. (Doc. 25-1 at 29-31). AVI points out that Roundtree's claims are preempted by K.R.S. § 342.690(1), the exclusivity provision of the Kentucky Workers' Compensation Act ("KWCA"), and that, under Kentucky law, employees may not make

such claims against their employers. (*Id.*). Rather than acknowledge these arguments, Roundtree's Response merely addresses the elements of negligence. (*See* Doc. 27 at 23-24). But establishing those elements is insufficient to allow her claims to proceed.

Indeed, the Sixth Circuit has explicitly held that the KWCA preempts such claims of negligent hiring, retention, and supervision because it "provides the exclusive remedy where an employee is injured by her employer's negligent actions." *Roof v. Bel Brands USA, Inc.*, 641 F. App'x 492, 499 (6th Cir. 2016) (citing K.R.S. § 342.690(1); *Hardin v. Action Graphics, Inc.*, 57 S.W.3d 844, 846 (Ky. Ct. App. 2001)); *see also Johnson v. Pennyrile Allied Cmty. Servs.*, No. 5:20-CV-071-TBR, 2022 WL 1004873, at *18 (W.D. Ky. Apr. 4, 2022), *appeal dismissed*, No. 22-5369, 2022 WL 16579678 (6th Cir. Oct. 3, 2022) (citing *Boggs v. Appalachian Reg'l Healthcare, Inc.*, No. 7:20-CV-151-REW, 2021 WL 5413801, at *4 (E.D. Ky. July 16, 2021)).

AVI's second point is also correct. Although the issue has apparently not been addressed by Kentucky state courts, several federal courts have held that Kentucky law does not permit employees to sue their current or former employers for negligent hiring, retention, or supervision. *See, e.g.*, *Burger King*, 993 F. Supp. 2d at 692; *Hamilton v. Anderson Forest Prods., Inc.*, No. 1:14-CV-00091-GNS, 2016 WL 4734375, at *6 (W.D. Ky. Sept. 9, 2016);

*Gatlin v. Shoe Show, Inc.*, No. 3:14-CV-00446-TBR, 2014 WL 3586498, at *5-6 (W.D. Ky. July 21, 2014); *Grubbs v. Thermo Fischer Sci.*, No. 13-183-DLB-CJS, 2014 WL 1653761, at *2 (E.D. Ky. Apr. 23, 2014); *Henn v. Pinnacle Pub., LLC*, No. 12-307-KSF, 2012 WL 6096670, at *3 (E.D. Ky. Dec. 7, 2012).

Accordingly, Roundtree cannot maintain her negligent hiring, retention, and supervision claims against AVI, her former employer.[5]

### *Conclusion*

Therefore, for the reasons stated above, **IT IS ORDERED** that:

(1) Defendants' Motion for Summary Judgment on all Plaintiff's claims (Doc. 25) be, and is hereby, **GRANTED**; and

(2) A separate judgment shall enter concurrently herewith.

This 15th day of August 2023.



**Signed By:**

*__William O. Bertelsman__*  WOB

**United States District Judge**

---

[5] Because Roundtree's claims fail for other reasons, the Court need not address AVI's contention that it did not employ Cody. (*See* Doc. 25-1 at 31).